**THE ANTOINE LAW FIRM, LLC**
Wilson D. Antoine, Esq.
NJ Bar Id#  027922008
52 Underwood Street, #1L
Newark, New Jersey 07106
Tel. (973) 370-5347
Fax. (908) 925-5021
Email: wilsona@antoinelawfirm.com
   *Attorney for Plaintiff*
   *Tiara J. Samuel*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **TIARA J. SAMUEL,** | Civ. No. |
| Plaintiff, | |
| v. | |
| **PARKWOOD GARDENS ASSOCIATES, LLC; JOHN DOES 1-10; ABC CORPS. 1-10,** | |
| Defendants. | |

**COMPLAINT**

## TABLE OF CONTENTS

**SUMMARY OF ACTION**.............................................. 3

**PARTIES**......................................................... 4

**JURISDICTION AND VENUE**........................................ 4

**ALLEGATIONS COMMON TO ALL COUNTS**............................. 5

**COUNT ONE**
(FHA, 42 U.S.C. § 3601 *et seq.*; as against Parkwood).......... 12

**COUNT TWO**
(§ 504 of the RA, 29 U.S.C. § 791 *et seq.*;
as against Parkwood)........................................... 15

**COUNT THREE**
(NJLAD, N.J.S.A. § 10:5-1 *et seq.*;
as against all Defendants)................................... 16

**COUNT FOUR**
(Common-Law Right of Reasonable Access to Public Places;
as against Parkwood)....................................... 19

**COUNT FIVE**
(CFA, N.J.S.A. 56:8-1 *et seq.*; as against Parkwood).......... 21

**COUNT SIX**
(Breach of Contract; as against Parkwood).................... 23

**COUNT SEVEN**
(Breach of Implied Covenant of Good Faith and Fair Dealing;
as against Parkwood)....................................... 25

**COUNT EIGHT**
(Tortious Interference; as against Fictitious Defendants)..... 26

**COUNT NINE**
(Promissory Estoppel; as against all Defendants)............. 28

**COUNT TEN**
(Unjust Enrichment; as against all Defendants)............... 29

**COUNT ELEVEN**
(Anti-Reprisal Law, N.J.S.A. § 2A:42-10.10 *et seq;*
as against Parkwood)....................................... 30

**COUNT TWELVE**
(Malicious Use and Abuse of Civil Process;
as against all Defendants)................................... 32

**COUNT THIRTEEN**
(Infliction of Emotional Distress;
as against all Defendants)................................... 34

JURY DEMAND................................................. 36

CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2.............. 36

Plaintiff, Tiara J. Samuel ("Plaintiff"), by and through the Antoine Law Firm, LLC, by way of Complaint against the Defendants Parkwood Gardens Associates, LLC ("Parkwood Gardens"), John Does 1-10, and ABC Corps. 1-10 (collectively "Defendants" or "Parkwood"), state:

## SUMMARY OF ACTION

1.    This matter arises out of the wrongful retaliation, discrimination, and eviction proceedings initiated against Plaintiff on account of her disability, race, gender, and/or her complaints and attempts to organize other tenants concerning the habitability of her apartment complex.

2.    As a result of Defendants' actions, Plaintiff brings claims herein for violation of § 504 of the Rehabilitation Act (the "RA"), the New Jersey Law Against Discrimination (the "NJLAD"), the Federal Fair Housing Act (the "FHA"), the New Jersey Consumer Fraud Act (the "CFA"), and the Anti-Reprisal Law, as well as a common-law reasonable access claim and claims for breach of lease, breach of the implied covenant of good faith and fair dealing, unjust enrichment, promissory estoppel, malicious use of civil process, and infliction of emotional distress.

**PARTIES**

3.    Plaintiff is a natural person who resides at 6 Koster Boulevard, Apt. 3B, Edison, NJ 08837.

4.    Parkwood is a New Jersey For-Profit Domestic Corporation incorporated on July 23, 1964, with a principal place of business at 200 Central Avenue, Mountainside, NJ 07092-1997.

5.    ABC Corps. 1-10 are fictitious unnamed companies that are affiliated with Parkwood or each other, and/or are the parent companies and/or subsidiaries of Parkwood, and/or independent fictitious unnamed companies that caused, abetted, aided in, or contributed to the discrimination against Plaintiff.

6.    John Does 1-10 are fictitious unnamed persons, employed by, managing, and/or affiliated with Parkwood, and/or independent fictitious unnamed persons that caused, abetted, aided in, or contributed to the discrimination/retaliation (or conspired to discriminate/retaliate) against Plaintiff.

**JURISDICTION AND VENUE**

7.    This action arises, in part out of violations of several federal discrimination and civil rights acts, including but not limited to the FHA (42 U.S.C. § 3601 *et seq.*), and the RA (29 U.S.C. § 791 *et seq.*), and subject matter jurisdiction is therefore conferred on this Court by 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction).

8.    Supplemental jurisdiction over the related state law

claims is conferred on this Court by 28 U.S.C. § 1367(a).

9.   A substantial part of the events or omissions giving rise to the claims in this complaint occurred in this judicial district, and all Defendants reside in this District.  Furthermore, Defendants are subject to the Court's personal jurisdiction with respect to this action as they are all residents of New Jersey. Accordingly, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

<u>**ALLEGATIONS COMMON TO ALL COUNTS**</u>

10.   Parkwood owns the premises (the "Premises") and apartment complex (the "Complex") at Koster Boulevard in Edison, New Jersey.

11.   The Complex is composed of approximately 576 apartments, all of which are available for rent to the public.

12.   The Complex has common laundry facilities onsite.

13.   The Complex also has common courtyards, walking paths, and parking.

14.   Plaintiff has been a dutiful and responsible tenant of Parkwood since August 1, 2018.

15.   Plaintiff has always paid her rent on time without fail.

16.   Plaintiff has never breached any term of the applicable leases (collectively the "Lease") with Parkwood Gardens.

17.   Since she moved in, Plaintiff has owned an emotional support animal.

18.   The emotional support animal is named Bentley Bailey Rae Samuel.

19.   Plaintiff notified Parkwood of the existence of the emotional support animal prior to the day she moved in.

20.   The Lease generally prohibits all pets and all caring for, feeding, or maintaining of "ANY ANIMAL ANYWHERE IN THE COMPLEX."

21.   However, there is a pet rider to the Lease (the "Pet Rider").

22.   The Pet Rider also explicitly carves out an exception for "SERVICE AND SUPPORT ANIMALS," so long as Parkwood Gardens is provided with "PROOF OF NECESSITY," "A CERTIFICATE OF INSURANCE ADEQUATELY COVERING BOTH LIABILITY AND PROPERTY DAMAGE," and "A COPY OF A MUNICIPAL DOG LICENSE/REGISTRATION WITH PROOF OF RABIES VACCINATION."

23.   Plaintiff's emotional support animal has never hurt, or exhibited aggressive behavior or tendencies to hurt, any resident or personnel of Parkwood's apartment complex on the Premises (the "Complex").

24.   Plaintiff provided a certificate of insurance to Parkwood as requested.

25.   Plaintiff provided Parkwood with a copy of a municipal dog license and proof of rabies vaccinations as requested.

26.   The municipal dog license refers to Plaintiff's dog as

an emotional support dog.

27. Plaintiff provided Parkwood with proof of necessity in the form of a medical professional's note.

28. Plaintiff complied with the Lease's Pet Rider in all respects.

29. Throughout Plaintiff's first year of residency at Parkwood, no one ever complained about Plaintiff's emotional support animal.

30. From January 2019 through July 2019, Plaintiff's apartment had a mouse infestation.

31. Although she raised this issue repeatedly, Parkwood failed to remediate the mouse infestation for months, causing her to have to take actions and incur costs to address the problem herself.

32. At one point, Plaintiff attempted to notify the other tenants of the issue with the mouse infestation in the hopes that a collective solution could be discovered. It was not until the end of July 2019, after Plaintiff reached out to the other tenants, that Parkwood finally remediated the mouse issue in her apartment.

33. Notwithstanding the infestation, on or about July 5, 2019, Plaintiff entered into a second leasehold agreement with Parkwood Gardens.

34. At this time, all relevant documentation required under the Lease had been tendered to Parkwood Gardens, including proof

of necessity and possession of an emotional support animal, proof
of insurance for the animal, proof of rabies vaccination, and proof
of a municipal license.

35.   Despite having full knowledge of Plaintiff's need for an
emotional support animal, on August 24, 2019, Parkwood Gardens
sent Plaintiff a Notice to Cease (herein "First Notice").

36.   On information and belief, the First Notice was issued
in retaliation for Plaintiff's attempts to enforce her rights under
the Lease, concerning the mouse infestation in her apartment.

37.   The First Notice fraudulently accused Plaintiff of
having failed to provide proof of insurance, necessity, and
municipal license for her emotional support animal.

38.   The First Notice directed Plaintiff to provide all
documentation regarding insurance for her support animal, even
though she had provided this information with the renewal of the
Lease.

39.   In reliance on this notice, Plaintiff responded in
writing via facsimile and certified mail #70190700000104062904,
which was signed and received by Parkwood's office on August 28,
2019 at 11:52 a.m.

40.   In fact, Plaintiff provided the exact language in her
insurance policy, reflecting that her animal is covered in
accordance with the Lease's pet rider.

41.   Plaintiff also forwarded a letter directly from

8

Assurant-Renter's Insurance Policy, further explaining coverage.

42.   Nevertheless, in a voicemail message on September 5, 2019, onsite Parkwood Gardens employee, Alice, fraudulently misrepresented to Plaintiff that her proof of insurance needed to specify the breed and name of her animal.

43.   The pet rider to the Lease contains no such requirement.

44.   Parkwood's unilateral and oral modification of the Lease constituted a violation of N.J.S.A. § 2A:18-61.1 *et seq.*

45.   On September 12, 2019, Parkwood served Plaintiff with an improper "Notice to Quit & Demand for Possession" (herein "Final Notice").

46.   The language in this notice was also fraudulent, insisting that Plaintiff had failed to provide an insurance policy specifically covering Plaintiff's "pet."

47.   On account of Parkwood's actions, Plaintiff was required to expend sums to retain an attorney to protect her rights and resolve the dispute before it could result in costly wrongful eviction proceedings.

48.   However, on December 17, 2019, Parkwood took steps to file a frivolous, retaliatory, and malicious eviction complaint against Plaintiff under Docket No. MID-LT-011941-19.

49.   Notably, both the Lease and Pet Rider provide Parkwood with a right to attorneys' fees in connection with any legal action to enforce the Lease.

50.   The   eviction   complaint   fraudulently   stated   that Plaintiff breached the Lease by having a pet.

51.   On   account   of   these   actions,   Plaintiff,   again,   was compelled   to   retain   an   attorney   to   handle   these   eviction proceedings.

52.   During   the   pendency   of   the   matter,   Parkwood's   own counsel   admitted   to   Plaintiff's   counsel   that   the   proceedings lacked merit, but that he was pursuing the matter on the request of his client.

53.   Trial was scheduled early 2020.

54.   When Plaintiff, an attorney herself, did not capitulate to Parkwood's threats of eviction and coercion, and when the judge intimated   that   he   would   dismiss   the   case   and   award   Plaintiff counsel fees, Parkwood abandoned the case that Parkwood knew lacked merit.

55.   The   case   was   dismissed   on   March   3,   2020,   but   no attorneys' fees or costs were awarded to Plaintiff.

56.   The   continued   prosecution   of   the   wrongful   eviction proceedings   constituted   a   continuing   violation   of   Plaintiff's rights,   which   violations   began   with   the   first   act   of   retaliation and   discrimination   on   August   24,   2019   and   ended   with   the   dismissal of the wrongful eviction proceedings on March 3, 2020.

57.   On March 17, 2020, the Supreme Court of New Jersey issued an Order tolling "the computation of time periods . . . under any

statute of limitations for matters in all courts, for purposes of filing deadlines, [from] March 16 through March 27, 2020."

58.   On March 27, 2020, the Supreme Court of New Jersey issued its First Omnibus Order on court operations and legal practice in the wake of the Pandemic, and it created "the additional period from March 28 through April 26, 2020 . . . , thus extending the tolling established by the March 17 Order."

59.   On April 24, 2020, the Second Omnibus Order extended the timeframe "from March 16 through May 10, 2020."

60.   On May 28, 2020, the Third Omnibus Order terminated the tolling of the limitations period.

61.   On June 11, 2020 the Supreme Court's Fourth Omnibus Order clarified that the above-referenced period "shall not be included in calculating . . . trial court filing deadlines."

62.   This directive has been continued by each subsequent omnibus order, including the March 23, 2021, Eleventh Omnibus Order.

63.   As a result of Parkwood's continuing violations, Plaintiff was caused to suffer severe emotional distress, damage to her reputation, and exacerbation of her disability, along with its interference with her work and livelihood.

## COUNT ONE
(FHA, 42 U.S.C. § 3601 *et seq.*; as against Parkwood)

64. Plaintiff repeats and realleges all of the factual allegations in the Complaint as if set forth in their entirety herein.

65. As referenced in the medical professional's notes provided to Parkwood upon the signing and renewal of the Lease, and reflected in the municipal dog license, which medical professional's notes and license are incorporated herein by reference, Plaintiff suffers from a disability in the form of a medical mental condition and need for an emotional support animal to prevent impulsive and/or destructive behavior.

66. Plaintiff's medical condition qualifies as a disability or handicap in that there is a record of such impairment, she has been regarded in the past by Parkwood as having an impairment, and because it creates substantial limitations on her concentration, thinking, communicating, interaction with others, and work, consistent with the definitions for handicap in the FHA. *See* 42 U.S.C.A. § 3602(h)(1)-(3); 24 CFR § 100.201(a)-(b); *see also* 42 U.S.C. § 12102(2)(A).

67. Plaintiff's need for an emotional support animal meets the definition of auxiliary aid and service, requiring an accommodation or modification under the FHA. *See* 24 CFR § 100.201; 24 CFR § 100.203; 24 CFR § 100.204.

68.   Parkwood knew of Plaintiff's disability and need for an accommodation and/or modification, and/or it regarded Plaintiff as person with a disability and need for a modification at all times relevant, and it provided that accommodation from 2018 through July 2019.

69.   Then in August 2019, although there had been no amendments to the Lease or Pet Rider and no change in Plaintiff's circumstances, Parkwood discriminated against Plaintiff on the basis of her actual/regarded disability, by inquiring into the nature of her disability and trying to evict her for needing an emotional support animal.

70.   Parkwood violated the FHA's prohibition on inquiring about the nature or extent of a person's disability and on requesting documentation of whether an emotional support animal has been certified, trained, or licensed as an emotional support animal, by selectively requesting more information of Plaintiff than any other applicants for housing.   24 CFR § 100.202(c).

71.   Parkwood attempted to prohibit Plaintiff from being accompanied by her emotional support animal in all areas of public accommodation by evicting her for having an emotional support animal, all in violation of the FHA.   24 CFR § 100.202(a)-(b).

72.   Parkwood erected additional barriers and contractual eligibility criteria that were nowhere to be found in the Lease, all to screen out Plaintiff on the basis of her need for an

accommodation in violation of the FHA.  42 U.S.C. § 3601 *et seq*.

73.  Parkwood's actions in threatening and prosecuting eviction proceedings against Plaintiff on the basis of her use of an emotional support animal, was a violation of the FHA, and its implementing regulations.

74.  As a result of Parkwood's actions, Plaintiff has suffered damages, including exacerbation of her medical condition, pain and suffering, damage to her reputation as a tenant, and emotional harm and distress.

**WHEREFORE,** Plaintiff Tiara Samuel, demands judgment against Defendant Parkwood for:

    (a)  Compensatory damages;

    (b)  Consequential damages;

    (c)  Pain and Suffering damages;

    (d)  Emotional Distress damages;

    (e)  Reputational damages;

    (f)  Interest;

    (g)  Punitive damages;

    (h)  Attorneys' fees and costs of suit; and

    (i)  Such other relief as the Court may deem just and
         appropriate.

<u>**COUNT TWO**</u>
(§ 504 of the RA, 29 U.S.C. § 791 *et seq.*; as against Parkwood)

75.   Plaintiff repeats and realleges all of the factual allegations in the Complaint as if set forth in their entirety herein.

76.   At all times relevant to this action, on information and belief, Defendant Parkwood and/or its subsidiary and/or parent organization, has received federal aid and assistance from the federal government.

77.   Defendant Parkwood is therefore subject to 29 U.S.C. § 794(b)(3)(A)(ii).

78.   Plaintiff's medical mental condition constitutes a "disability" impacting major life activities as defined by 29 U.S.C. § 705(20).

79.   Plaintiff's disability impacts her concentration, thinking, communicating, interaction with others, and work.

80.   Parkwood knew of Plaintiff's disability and need for an accommodation and/or modification in the form of an emotional support animal, and Parkwood provided that accommodation from 2018 through July 2019.

81.   Then in August 2019, although there had been no amendments to the Lease or Pet Rider and no change in Plaintiff's circumstances, Parkwood discriminated against Plaintiff on the basis of her disability, by inquiring into the nature of her

disability and trying to evict her for needing an emotional support animal, all in violation of Section 504 of the RA, and its implementing regulations.

82.   As a result of Defendant Parkwood's actions and deliberate indifference, Plaintiff has suffered damages, including exacerbation of her medical condition, pain and suffering, damage to her reputation as a tenant, and emotional harm and distress.

**WHEREFORE,** Plaintiff Tiara Samuel, demands judgment against Defendant Parkwood for:

        (a)   Compensatory damages;

        (b)   Consequential damages;

        (c)   Pain and Suffering damages;

        (d)   Emotional Distress damages;

        (e)   Reputational damages;

        (f)   Interest;

        (g)   Punitive damages;

        (h)   Attorneys' fees and costs of suit; and

        (i)   Such other relief as the Court may deem just and appropriate.

**COUNT THREE**
(NJLAD, N.J.S.A. § 10:5-1 *et seq.*; as against all Defendants)

83.   Plaintiff repeats and realleges all of the factual allegations in the Complaint as if set forth in their entirety herein.

84.   Plaintiff is an African-American female with a medical

condition that meets the disability definition under the NJLAD (N.J.S.A. § 10:5-5(q)).

85. Plaintiff's disability impacts her concentration, thinking, communicating, interaction with others, and work.

86. Parkwood knew of Plaintiff's disability, race, gender, and need for an accommodation and/or modification in the form of an emotional support animal, and Parkwood provided the accommodation from 2018 through July 2019.

87. Then in August 2019, although there had been no amendments to the Lease or Pet Rider and no change in Plaintiff's circumstances, and soon after Plaintiff complained about the condition of her apartment and the presence of rodents to her neighboring tenants, Parkwood discriminated, in the provision of rental housing, against Plaintiff on the basis of her disability, by inquiring into the nature of her disability and trying to evict her for needing an emotional support animal, all in violation of the NJLAD (N.J.S.A. § 10:5-12(g), (h)) and its implementing regulations.

88. On information and belief, Parkwood discriminated against Plaintiff in order to retaliate against her for trying to organize the other tenants to enforce her rights under the Lease.

89. On information and belief, Parkwood was motivated to retaliate and discriminate against her specifically because she is African-American, female, and/or handicapped, because they

17

believed that a person from her vulnerable class would not assert her rights.

90.   The principals and upper management of Parkwood, along with John Does 1-10, and ABC Corps. 1-10, knew of the above-referenced acts of discrimination and retaliation, and wilfully, intentionally, and maliciously participated, aided, abetted, and encouraged those acts.

91. As a result of Defendants' actions and deliberate indifference, Plaintiff has suffered damages, including exacerbation of her medical condition, pain and suffering, damage to her reputation as a tenant, and emotional harm and distress.

**WHEREFORE**, Plaintiff Tiara Samuel, demands judgment jointly and severally against Defendants for:

       (a)   Compensatory damages;

       (b)   Consequential damages;

       (c)   Pain and Suffering damages;

       (d)   Emotional Distress damages;

       (e)   Reputational damages;

       (f)   Interest;

       (g)   Punitive damages;

       (h)   Attorneys' fees and costs of suit; and

       (i)   Such other relief as the Court may deem just and appropriate.

### COUNT FOUR
(Common-Law Right of Reasonable Access to Public Places;
as against Parkwood)

92. Plaintiff repeats and realleges all of the factual allegations in the Complaint as if set forth in their entirety herein.

93. By and through the actions described above, Parkwood retaliated and discriminated against Plaintiff in violation of a clear mandate of public policy not to discriminate against persons in need of emotional assistance animals.

94. Parkwood's conduct violated clear mandates of public policy as reflected by Plaintiff's state and federal constitutional and statutory rights, including but not limited to her right to equal protection and procedural and substantive due process rights, along with his rights under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and the federal and the state statutory discrimination laws cited elsewhere in this Complaint.

95. The public policy opposed to discriminating against an individual's need for an emotional support animal has been exemplified in the recent victory of the New Jersey Division of Civil Rights in the matter of *Jerrica Spence v. Brooks-Sloate Terrace Cooperative Association, Inc., et al.*, DCR Docket No. HR08MT-65799, HUD Case NO. 02-16-41.63-8, OAL Docket No. CRT 15928-2016N (OAL Feb. 27, 2019), where the Division vindicated the rights

of a grieving daughter who sought to maintain her emotional support dog in her living quarters.

96.   Parkwood's violation of Plaintiff's rights and New Jersey's public policy, was intentional and willful.

97.   Parkwood's actions violated Plaintiff's common-law right of reasonable access to public places.

98.   Throughout Plaintiff's residency on the Premises, her emotional support animal has not threatened the security of the Premises or the Complex therein.

99.   Throughout Plaintiff's residency on the Premises, her emotional support animal has not disrupted the functioning of the Complex's operations or peace and quiet enjoyment of the Complex's other residents.

100. Throughout Plaintiff's residency on the Premises, her emotional support animal has not disrupted the regular and essential operations of the Premises and the Complex therein.

101. Defendant Parkwood's actions, in discriminating and retaliating against Plaintiff by attempting to evict her from the Premises, were not only discriminatory, but arbitrary.

102. As a result of Defendant Parkwood's actions, Plaintiff has suffered damages, including pain and suffering, and emotional harm and distress.

**WHEREFORE,** Plaintiff Tiara Samuel, demands judgment against Defendant Parkwood for:

(a)   Compensatory damages;

(b)   Consequential damages;

(c)   Pain and Suffering damages;

(d)   Emotional Distress damages;

(e)   Reputational damages;

(f)   Interest;

(g)   Punitive damages;

(h)   Attorneys' fees and costs of suit; and

(i)   Such other relief as the Court may deem just and appropriate.

## COUNT FIVE
(CFA, N.J.S.A. 56:8-1 *et seq.*; as against Parkwood)

103. Plaintiff repeats and realleges all of the factual allegations in the Complaint as if set forth in their entirety herein.

104. Parkwood knew of Plaintiff's disability and need for an accommodation and/or modification in the form of an emotional support animal, and Parkwood provided that accommodation from 2018 through July 2019.

105. Plaintiff relied on Parkwood's interpretation and application of the Lease in deciding to renew the Lease.

106. Defendants knew that Plaintiff was relying on their prior conduct, and they knew that Plaintiff required an emotional support animal.

107. Yet, they misrepresented and/or concealed their

intention to continue to provide that accommodation.

108. Beginning in August 2019, although there had been no amendments to the Lease or Pet Rider and no change in Plaintiff's circumstances, Defendants began erecting new requirements in order for Plaintiff to obtain her accommodation, and they initiated eviction proceedings on the basis of new requirements that had been concealed from her.

109. As aforestated, Defendants conspired to engage in "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, [and] the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, . . . ." N.J.S.A. 56:8-2.

110. In particular, in or about May 2019, Parkwood sent Plaintiff a lease renewal addendum, to entice Plaintiff to renew, but the addendum omitted any intention to add new requirements to the Pet Rider and the proofs to be submitted thereunder.

111. Defendants' services and rental space constitute merchandise under the Consumer Fraud Act, and their communications and other documents disseminated to Plaintiff constitute advertisements under N.J.S.A. § 56:8-1.

112. As a result of Defendants' actions, Plaintiff has suffered ascertainable losses and damages in the form of attorneys'

fees, and other costs to respond to Defendants' misrepresentations and wrongful eviction proceedings.

**WHEREFORE,** Plaintiff Tiara Samuel, demands judgment jointly and severally against Defendants for:

      (a)  Treble damages;

      (b)  Emotional Distress damages;

      (c)  Interest;

      (d)  Disgorgement of Defendants' profits;

      (e)  Declaratory relief;

      (f)  Punitive damages;

      (g)  Attorneys' fees and costs of suit; and

      (h)  Such other relief as the Court may deem just and appropriate.

### COUNT SIX
(Breach of Contract; as against Parkwood)

113. Plaintiff repeats and realleges all of the factual allegations in the Complaint as if set forth in their entirety herein.

114. Plaintiff entered into the Lease with Parkwood.

115. Paragraph 8 of the Lease states that Parkwood is entitled to reasonable attorney fees and costs if required to hire an attorney to enforce the Lease, plus liquidated damages in the form of an additional $150.00 for the initiation of a summary action, $30.00 for each court appearance, $200.00 for each stay hearing, a fee of 35% of any outstanding monies required to be collected

23

through subsequent collection efforts, and court costs.

116. The Lease's Pet Rider provides that Plaintiff would be responsible for legal fees in connection with any eviction proceedings related to a support animal unlawfully or fraudulently brought onto the Premises.

117. N.J.S.A. § 2A:18-61.66, by operation of law, automatically reads into the Lease a parallel implied covenant requiring Parkwood to pay the same fees and costs if the tenant is successful in the action or summary proceeding by the landlord against the tenant.

118. Parkwood breached the Lease by failing to remediate a rodent infestation for six months without any abatement.

119. Parkwood also breached the Lease by bringing a frivolous eviction proceeding against her for the purported violation of provisions nowhere to be found in the Lease.

120. During the eviction proceedings, Parkwood's counsel admitted to Plaintiff's then-counsel that the proceedings were without merit, but that Parkwood was forcing the issue.

121. During the eviction proceedings, the presiding judge advised that he was going to rule against Parkwood and award Plaintiff counsel fees and costs.

122. As a result, Parkwood abandoned the eviction proceedings.

123. By engaging in the above-referenced eviction

proceedings, serving frivolous notices and engaging in related acts of harassment as stated above, Parkwood breached the Lease.

124. As a result of Parkwood's breaches, Plaintiff has suffered and will continue to suffer damages.

**WHEREFORE,** Plaintiff Tiara Samuel, demands judgment against Defendant Parkwood for:

        (a)   Compensatory damages;

        (b)   Consequential damages;

        (c)   Liquidated damages

        (d)   Interest;

        (e)   Punitive damages;

        (f)   Attorneys' fees and costs of suit; and

        (g)   Such other relief as the Court may deem just and appropriate.

### COUNT SEVEN
(Breach of Implied Covenant of Good Faith and Fair Dealing;
as against Parkwood)

125. Plaintiff repeats and realleges all of the factual allegations in the Complaint as if set forth in their entirety herein.

126. In the alternative, Parkwood's aforementioned failures and breaches constitute a breach of the implied covenant of good faith and fair dealing, along with other implied warranties, including but not limited to the warranty of habitability and the warranty of quiet enjoyment.

127. As a result of Parkwood's conduct, Plaintiff has

suffered and will continue to suffer damages.

**WHEREFORE,** Plaintiff Tiara Samuel, demands judgment against Defendant Parkwood for:

        (a)  Compensatory damages;

        (b)  Consequential damages;

        (c)  Liquidated damages

        (d)  Interest;

        (e)  Punitive damages;

        (f)  Attorneys' fees and costs of suit; and

        (g)  Such other relief as the Court may deem just and appropriate.

**COUNT EIGHT**

(Tortious Interference; as against Fictitious Defendants)

128. Plaintiff repeats and realleges all of the factual allegations in the Complaint as if set forth in their entirety herein.

129. Defendants John Does 1-10, and ABC Corps. 1-10, including the owners of Parkwood, knew of and intentionally and tortiously interfered with Plaintiff's Lease with Parkwood.

130. In particular, on information and belief, the fictitious Defendants interfered with Plaintiff's Lease with Parkwood by causing and/or inducing Parkwood to breach that Lease and/or carrying out and effecting Parkwood's intent to break the Lease.

131. The fictitious defendants interfered with the Lease by making frivolous demands for additional personal medical

information, erecting requirements and barriers, to an accommodation, which did not appear in the Lease, sending fraudulent notices, including a notice to quit, and effecting a wrongful eviction proceeding.

132. The fictitious Defendants tortiously interfered with Plaintiff's prospective economic advantage by engaging in the above-referenced harassing acts with knowledge that it would exacerbate her psychiatric conditions, adversely affect her reputation as a tenant, and adversely affect her performance at work and thus her prospective economic advantage from work.

133. The fictitious Defendants conspired together, or one convinced the others to assist in breaching the Lease and interfering with Plaintiff's economic advantage so that they could profit from Plaintiff's full payments under the Lease, while denying her the full benefits of the Lease.

134. As a result of the conduct of the fictitious Defendants, Plaintiff has suffered and will continue to suffer damages.

**WHEREFORE**, Plaintiff Tiara Samuel, demands judgment jointly and severally against the fictitious Defendants for:

       (a)   Compensatory damages;

       (b)   Consequential damages;

       (c)   Liquidated damages

       (d)   Pain and Suffering damages;

       (e)   Emotional Distress damages;

(f)   Reputational damages;

(g)   Interest;

(h)   Punitive damages;

(i)   Attorneys' fees and costs of suit; and

(j)   Such other relief as the Court may deem just and appropriate.

**COUNT NINE**
(Promissory Estoppel; as against all Defendants)

135. Plaintiff repeats and realleges all of the factual allegations in the Complaint as if set forth in their entirety herein.

136. Alternatively, Defendants through word, deed and action as set forth promised to not interfere with Plaintiff's enjoyment of her residence at the Premises, and promised to allow her use of an emotional support animal so long as she provided "PROOF OF NECESSITY," "A CERTIFICATE OF INSURANCE ADEQUATELY COVERING BOTH LIABILITY AND PROPERTY DAMAGE," and "A COPY OF A MUNICIPAL DOG LICENSE/REGISTRATION WITH PROOF OF RABIES VACCINATION."

137. Plaintiff relied on Defendants' promises, actions, representations and the parties' course of conduct, in renewing the Lease and paying the monthly rent her apartment with Parkwood.

138. Defendants used these promises to induce Plaintiff to remain in the Lease and continue paying rent.

139. By improperly requiring Plaintiff to jump through additional hoops and overcome additional obstacles to keep her

emotional support animal, and by attempting to evict her for having an emotional support animal, Defendants violated the above-referenced representations and course of conduct to deprive Plaintiff of resources, funds, and time, as stated in more detail above.

140. Plaintiff has been damaged by reason of Defendants' breach of their promises.

**WHEREFORE,** Plaintiff Tiara Samuel, demands judgment jointly and severally against Defendants for:

      (a)  Compensatory damages;

      (b)  Consequential damages;

      (c)  Interest;

      (d)  Punitive damages;

      (e)  Attorneys' fees and costs of suit; and

      (f)  Such other relief as the Court may deem just and appropriate.

<u>**COUNT TEN**</u>
(Unjust Enrichment; as against all Defendants)

141. Plaintiff repeats and realleges all of the factual allegations in the Complaint as if set forth in their entirety herein.

142. Alternatively, Defendants have been unjustly enriched by wrongfully retaining and withholding monies due to Plaintiff by reason of the wrongful eviction proceedings they initiated.

143. As a result of Defendants' conduct, Plaintiff has

suffered and will continue to suffer damages.

**WHEREFORE,** Plaintiff Tiara Samuel, demands judgment jointly and severally against Defendants for:

      (a)   Compensatory damages;

      (b)   Consequential damages;

      (c)   Interest;

      (d)   Punitive damages;

      (e)   Attorneys' fees and costs of suit; and

      (f)   Such other relief as the Court may deem just and appropriate.

<u>**COUNT ELEVEN**</u>
(Anti-Reprisal Law, N.J.S.A. § 2A:42-10.10 *et seq;*
as against Parkwood)

144. Plaintiff repeats and realleges all of the factual allegations in the Complaint as if set forth in their entirety herein.

145. At all times relevant, Plaintiff has been Parkwood's tenant at the Complex.

146. Parkwood served a notice to cease and desist as well as a notice to quit upon Plaintiff, and Parkwood instituted wrongful eviction proceedings against Plaintiff as a reprisal for the tenant's efforts to secure and/or enforce her rights under the Lease and the laws of the State of New Jersey, its governmental subdivisions, and the United States as set forth above, including her complaints about the rodent infestation and efforts to advise and organize the tenants in the Complex with respect to the growing

rodent infestation problem at the Complex.

147.  Parkwood served a notice to quit upon Plaintiff and instituted wrongful eviction proceedings against Plaintiff as a reprisal for the tenant's failure to comply with the terms of the tenancy, as unilaterally and substantially altered by Parkwood without cause, and as set forth above.

148. Parkwood knew that its eviction proceeding and related notices were frivolous.

149. Accordingly, Parkwood ceased prosecuting its claim before it could be penalized with a judgment of dismissal.

150. The remaining defendants aided, abetted, encouraged, and conspired with Parkwood to bring frivolous notices and eviction proceedings against Plaintiff.

151. Plaintiff sent several letters and made multiple calls to Parkwood and its agents to cease and desist their frivolous actions.

152. Defendants ignored Plaintiff's pleas.

153. As a result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages.

**WHEREFORE**, Plaintiff Tiara Samuel, demands judgment jointly and severally against Defendants for:

(a)   Compensatory damages;

(b)   Consequential damages;

(c)   Liquidated damages

(d)   Constructive Trust;

(e)   Declaratory Judgment;

(f)   Interest;

(g)   Punitive damages;

(h)   Attorneys' fees and costs of suit; and

(i)   Such other relief as the Court may deem just and appropriate.

## COUNT TWELVE
(Malicious Use and Abuse of Civil Process; as against all Defendants)

154. Plaintiff repeats and realleges all of the factual allegations in the Complaint as if set forth in their entirety herein.

155. Defendants conspired to bring frivolous eviction proceedings against Plaintiff under Docket No. MID-LT-011941-19.

156. Defendants actually initiated frivolous eviction proceedings against Plaintiff.

157. Defendants initiated the proceedings even though they knew that they had neither probable cause, nor a good-faith basis, to seek an eviction.

158. Defendants' eviction proceedings constitute civil process.

159. The Landlord-Tenant Division of the Special Civil Part of the Law Division of the Superior Court of New Jersey dismissed the action, when Defendants ceased to prosecute, resulting in a termination of civil process or procedure in Plaintiff's favor.

160. Defendants' actions were motivated by malice.

161. As a result of Defendants' actions, Plaintiff has suffered a special grievance in the form of the irreparable damage to her reputation as a tenant, damage that will affect her standing in seeking housing with other residences.

162. Defendants conspired together, and each convinced the others to misuse and abuse civil process so that they could intimidate and retaliate against Plaintiff for lawfully exercising her rights.

163. As a result of the conduct of Defendants, Plaintiff has suffered and will continue to suffer irreparable harm and special grievances.

**WHEREFORE,** Plaintiff Tiara Samuel, demands judgment jointly and severally against Defendants for:

        (a)   Compensatory damages;

        (b)   Consequential damages;

        (c)   Pain and Suffering damages;

        (d)   Emotional Distress damages;

        (e)   Reputational damages;

        (f)   Interest;

        (g)   Punitive damages;

        (h)   Attorneys' fees and costs of suit; and

        (i)   Such other relief as the Court may deem just and appropriate.

**COUNT THIRTEEN**

(Infliction of Emotional Distress; as against all Defendants)

164. Plaintiff repeats and realleges all of the factual allegations in the Complaint as if set forth in their entirety herein.

165. At all times relevant, Parkwood was aware of Plaintiff's delicate medical condition because Plaintiff had provided a medical note to Parkwood as required by the Lease.

166. Parkwood shared this information with the other Defendants as part of their conspiracy to intimidate, harass, retaliate, and discriminate against Plaintiff.

167. Defendants deliberately, intentionally, recklessly, or negligently brought a wrongful eviction proceeding against, and fabricated breaches to harass, Plaintiff with the knowledge and intention that she suffer severe, genuine emotional distress.

168. As a direct result of Defendants' actions, Plaintiff suffered severe, genuine emotional distress.

169. Defendants' actions in harassing, discriminating against, retaliating against, and bringing wrongful eviction proceedings against Plaintiff, without just cause and over Plaintiff's warnings and protestations, was extreme and outrageous.

170. Defendants intended, knew, believed in a high degree of probability, or should have known that their conduct would cause

severe and genuine emotional distress to Plaintiff that no reasonable person could be expected to endure, particularly as the COVID-19 Pandemic was just beginning to take hold in the United States at the time the eviction proceedings were going into full swing.

171. As a direct, but for, and proximate result of Defendants' conduct, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff Tiara Samuel, demands judgment jointly and severally against Defendants for:

       (a)  Compensatory damages;

       (b)  Consequential damages;

       (c)  Pain and Suffering damages;

       (d)  Emotional Distress damages;

       (e)  Reputational damages;

       (f)  Interest;

       (g)  Punitive damages;

       (h)  Attorneys' fees and costs of suit; and

       (i)  Such other relief as the Court may deem just and appropriate.

                                    **THE ANTOINE LAW FIRM, LLC**
                                    Attorney for Plaintiff

                                    By:  s/Wilson D. Antoine
                                          Wilson D. Antoine, Esq.
                                          Managing Partner

Dated:  February 14, 2022

**<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury as to all issues so triable.

By: <u>s/Wilson D. Antoine</u>
Wilson D. Antoine, Esq.
Managing Partner

Dated:  February 14, 2022

**<u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2</u>**

I hereby certify that the matter in controversy is not the subject of any other action or proceeding pending in any Court, or in any pending arbitration or administrative proceeding.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

**THE ANTOINE LAW FIRM, LLC**
Attorney for Plaintiff

By: <u>s/Wilson D. Antoine</u>
Wilson D. Antoine, Esq.
Managing Partner

Dated: February 14, 2022